UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 08-CV-2676 (JFB)

———————

MICHAEL WAGER,

Petitioner,

VERSUS

RAYMOND CUNNINGHAM,

Respondent.

———————

**MEMORANDUM AND ORDER**
June 8, 2010

———————

JOSEPH F. BIANCO, District Judge:

Michael Wager (hereinafter "petitioner" or "Wager") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner pled guilty to attempted burglary in the second degree (N.Y. Penal Law §§ 110.00/140.25[2]), and was sentenced, as a persistent violent felony offender, to an indeterminate term of imprisonment of twelve years to life.

Petitioner challenges his conviction on the grounds that he was denied effective assistance of trial counsel; that his guilty plea was not voluntary, knowing, or intelligent; and that he was denied effective assistance of appellate counsel. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied.

I. BACKGROUND

A. The Underlying Facts

The following facts are adduced from the instant petition and underlying record.

At approximately 4:15 a.m. on October 12, 2001, Police Officer Dan McKenna ("Officer McKenna") received a call for a burglary in progress at the AM/PM Delicatessen, located at 241 Nassau Road in Roosevelt, Nassau County, New York. (Second Grand Jury Test. of Officer McKenna (hereinafter "McKenna Tr.") 4-5.) Upon his arrival in a marked patrol car, Officer McKenna observed that the front door of the deli had been broken. (*Id.* at 51.) He observed a black plastic bag being pushed through the bottom of the glass door, which was followed by a male, later identified as Wager, who crawled out on all fours behind the bag. (*Id.*) Officer McKenna then observed the male stand up, grab the bag, and walk away from the scene. (*Id.*) When Wager saw Officer McKenna and the marked patrol car, he

began to run for about thirty or forty feet and eventually threw down the bag. (*Id.* at 45.) Officer McKenna got out of the car and, after a brief pursuit on foot, grabbed Wager on the corner of Debevoise and Nassau Road. (*Id.* at 51-52, 54, 55.) Officer McKenna asked Wager if anyone else was in the building, and Wager responded that there were two other males in the building and that he was only a lookout. (*Id.* at 52.) However, no one was found inside the building, and an investigation at the scene determined that no one else was involved. (*Id.* at 57, 59-60.)

Upon further investigation, the bag was found to contain one cash register and multiple packs of cigarettes. (*Id.* at 10.) Rafael Marmol ("Marmol"), the manager of the AM/PM Delicatessen, testified that neither Wager nor anyone else had permission to enter the deli that night and take property. (Second Grand Jury Test. of Rafael Marmol (hereinafter "Marmol Tr.") Tr. 22.) He testified that approximately $80 in cash, about sixty-five packs of cigarettes, and a cash register were taken from the store. (*Id.* at 23.) Marmol explained that the deli is located on the first floor of the building. (*Id.* at 19-21.) He indicated further that two apartments are on the second floor and that Lalio Plasencia ("Plasencia") was living in one of the apartments on the date in question. (*Id.* at 21.)

Additionally, Samir Mizced ("Mizced"), owner of 241 Nassau Road in Roosevelt, testified that the building is two stories with two stores at the first level, a nail salon and deli, and two apartments upstairs. (Second Grand Jury Test. of Samir Mizced (hereinafter "Mizced Tr.") Tr. 13.) He testified that two families were living in the two apartments on the night of October 12, 2001. (*Id.* at 15.)

B. Procedural History

Petitioner was indicted on November 29, 2001 for one count of burglary in the second degree, N.Y. Penal Law § 140.25(2), and one count of burglary in the third degree, N.Y. Penal Law § 140.20.

On January 30, 2002, defense counsel sought the dismissal of the burglary in the second degree indictment on the grounds that the building in question was not a "dwelling," and the defendant had no intent to enter the apartment. On April 26, 2002, the indictment was determined by the court to be legally sufficient to sustain the charges, and the evidence adduced in the grand jury established both that the building at issue was in fact a dwelling and that the defendant had the relevant intent to commit a crime therein.

On July 10, 2002, defense counsel filed a motion to re-argue that the burglary in the second degree indictment was legally insufficient on the grounds that the People failed to introduce evidence in the grand jury showing that the defendant either entered or remained unlawfully in the residential portion of the building. On September 6, 2002, defense counsel's motion to dismiss the charge as legally insufficient was granted.

On August 13, 2002, defendant filed a *pro se* motion seeking to relieve Kenneth Ross, Esq., as his attorney and have a new attorney assigned. The motion was granted, and Louis J. Milone, Esq., was assigned on September 4, 2002.

On September 27, 2002, the People filed a motion to re-present the charge of burglary in the second degree to another grand jury. The People's motion was granted on October 21, 2002, and petitioner was re-indicted for burglary in the second degree on November 19,

2

2002.

Petitioner pled guilty to attempted burglary in the second degree (N.Y. Penal Law §§ 110.00/140.25[2]) on September 8, 2003. Defendant's guilty plea was contingent upon defendant waiving his right to appeal and admitting that he was a persistent violent felony offender. (Mins. of Plea (hereinafter "Plea Tr.") at 2-3.) After he entered his guilty plea, but prior to his sentencing, petitioner made a motion to withdraw his plea; that motion was denied by the court. On February 18, 2005, petitioner was sentenced, as a persistent violent felony offender, to an indeterminate prison term of twelve years to life.

In October 2005, petitioner filed a motion to vacate the judgment against him pursuant to New York Criminal Procedure Law § 440.10, in which he alleged: (1) that his trial attorney (Louis Milone, Esq.) was ineffective for failing to challenge the legal sufficiency of the grand jury evidence with respect to the second indictment; and (2) that his attorney was ineffective for failing to obtain a statement from Mr. Plasencia, a resident of the building that petitioner burglarized, that would have verified that Plasencia never filed a complaint saying that his dwelling was burglarized. On February 6, 2006, the County Court denied petitioner's motion, finding that his claim was forfeited by his knowing, voluntary, and intelligent guilty plea. Petitioner did not seek leave to appeal from denial of his motion to vacate judgment.

On March 3, 2005, petitioner filed an appeal raising two claims: (1) that petitioner's motion to withdraw his plea should have been granted because petitioner was mentally incompetent at the time of his plea; and (2) that petitioner's pre-*Miranda* statement to a police officer should have been suppressed. In a *pro se* supplemental brief, petitioner made the following arguments: (1) the prosecutor committed misconduct in the grand jury; (2) the evidence presented to the grand jury was legally insufficient to support the second-degree burglary charge; and (3) his plea allocution was factually insufficient. The Appellate Division unanimously affirmed the judgment of conviction in a decision and order dated November 6, 2006. *People v. Wager*, 823 N.Y.S.2d 522 (App. Div. 2006). On December 29, 2006, leave to appeal to the Court of Appeals was denied. *People v. Wager*, 860 N.E.2d 1000 (N.Y. 2006).

On November, 13 2007, petitioner filed a *pro se* application for a writ of error *coram nobis* to obtain a new appeal on the ground that appellate counsel was ineffective because he failed to raise a claim of ineffective assistance of trial counsel with respect to petitioner's second assigned attorney (Louis Milone, Esq.). Specifically, petitioner contended that his trial counsel: (1) failed to investigate the facts and procedural history of the case; (2) failed to understand the law; (3) failed to conduct legal research; (4) failed to adequately oppose the People's application to re-present to the grand jury the second-degree burglary change; (5) failed to challenge the legal sufficiency of that charge; and (6) "provided information" to petitioner that led petitioner to believe that he could not win at trial and advised him to plead guilty. By decision and order dated February 10, 2008, petitioner's motion was denied. *People v. Wager*, 850 N.Y.S.2d 911 (App. Div. 2008). On May 29, 2008, the New York Court of Appeals subsequently denied petitioner's application for leave to appeal from the order of the Appellate Division. *People v. Wager*, 890 N.E.2d 261 (N.Y. 2008).

C. The Instant Petition

On June 26, 2008, petitioner moved before

3

this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that his trial counsel was ineffective for, *inter alia*, advising him to plead guilty; his guilty plea was entered involuntarily; and his appellate counsel was ineffective for failing to challenge the effectiveness of trial counsel. Petitioner filed a memorandum of law in support of his application on August 8, 2008. Respondent filed opposition papers on September 24, 2008. Petitioner filed a reply on October 31, 2008. Petitioner submitted a letter to the Court on April 12, 2010, requesting oral argument. Oral argument was held on June 1, 2010. The Court has fully considered all submissions of the parties.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA

4

deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

#### A. Procedural Issues

##### 1. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

##### 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural

default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

3. Application

As a threshold matter, respondent argues that petitioner's claim of ineffective assistance of trial counsel is procedurally barred from habeas review by the Court. The Court agrees.

Here, the County Court found that petitioner's claim challenging trial counsel's effectiveness was forfeited by his knowing, voluntary, and intelligent guilty plea and therefore denied petitioner's motion to vacate the judgment on February 6, 2006. The petitioner did not seek leave to appeal from the denial of his motion. Thus, any subsequent application for appellate review of those claims would be procedurally defaulted. Because no further state remedies are available to petitioner for petitioner's claims regarding his trial counsel's effectiveness, it is deemed exhausted. *Coleman*, 501 U.S. at 732. However, they are procedurally barred because petitioner did not raise them on direct appeal. *Hoke*, 933 F.2d at 120-21.

In order to avoid the procedural bar, petitioner asserts that a fundamental miscarriage of justice would occur from this Court's failure to consider his claim. Petitioner asserts actual innocence as grounds for the Court to consider his argument that his trial counsel was ineffective. In order to establish

6

actual innocence, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Furthermore, in the context of a habeas petition following a guilty plea, "'actual innocence' means *factual innocence*, not mere legal insufficiency." *Id.* (quoting *Bousley*, 523 U.S. at 623) (emphasis added).

Under New York Penal Law § 140.25, a person is guilty of burglary in the second degree when "he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling." *Id.* The testimony of Officer McKenna, Marmol, and Mizced constitutes legally sufficient evidence that petitioner did in fact attempt to commit burglary in the second degree. Specifically, Officer McKenna testified that he observed Wager push a large black bag through the opening in the door to the AM/PM Deli and observed Wager crawl through the opening after the bag. (McKenna Tr. 8.) He then observed Wager attempt to walk away carrying the bag; at that point, Officer McKenna took Wager into custody. (*Id.* at 10-11.) Officer McKenna further pointed to Wager in court as the man whom he had arrested on October 12, 2001. The bag that Wager was carrying contained the items missing from the deli. (*Id.* at 19.) Furthermore, there was testimony at the second grand jury hearing that indicated that there were two apartments on the second floor of the building containing the AM/PM Deli and that Plasencia was living in one of those apartments on the date in question (Marmol Tr. 21.) Moreover, the building's owner, Samir Mizced, testified at the second grand jury hearing that the building is two stories with two stores at the first level, a nail salon and deli, and two apartments upstairs. (Mizced Tr. 13.) He testified that two families were living in those apartments on the night of the burglary. (*Id.* at 15.)

Based on this testimony from the indictment alone, this Court cannot conclude that "it is more likely than not that no reasonable juror would have convicted" Wager. *See Fountain*, 357 F.3d at 255.[1] In reaching this conclusion, the Court is cognizant that in the context of a habeas petition following a guilty plea, "'actual innocence' means factual innocence, not mere legal insufficiency." *Fountain*, 357 F.3d at 255 (quoting *Bousley*, 523 U.S. at 623).

In sum, petitioner has provided no reasonable explanation for his failure to raise these claims in a direct appeal in state court, nor has he demonstrated that a fundamental miscarriage of justice would occur if this claim was not reviewed by the habeas court. In any event, assuming *arguendo* that this claim is reviewable, it is without merit, as set forth *infra*.

B. The Merits

1. Ineffective Assistance of Trial Counsel

Notwithstanding that the Court has determined that petitioner has procedurally defaulted on his claim of ineffective assistance of trial counsel, the Court nonetheless proceeds to analyze the merits of this claim. Petitioner argues that he was denied the effective assistance of trial counsel because his trial counsel advised him to plead guilty to the charge of burglary in the second degree even though there was allegedly no evidence to

---

[1] The Court further notes, but does not rely upon, the fact that at his guilty plea, petitioner stated that he in fact entered the delicatessen on October 12, 2001 with the intent to commit a crime therein and that he had no reason to doubt that there were people living in the building on the date in question. (Plea Tr. 11-12.)

7

support such a claim, and further did not challenge Wager's second indictment before a grand jury for second-degree burglary as legally insufficient. As a result, petitioner argues that his guilty plea was not knowingly, voluntarily, or intelligently made. As set forth below, having reviewed the record, the Court concludes that petitioner received effective assistance of trial counsel.

a. Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

b. Application

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. As an initial matter, since many of counsel's alleged deficiencies preceded entry of the guilty plea, federal

habeas relief is precluded. *See, e.g.*, *Sanchez v. Connell*, No. 9:06-cv-01416 (JKS), 2009 WL 1617142, at *6 (N.D.N.Y. June 9, 2009). A petitioner who pleads guilty forfeits the right to argue issues collateral to the guilty plea. *Id.* This rule exists because a plea of guilty "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). Thus, once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Indeed, once there has been an admission of guilt, "[t]he only proper focus of a federal habeas inquiry . . . is the voluntary and intelligent character of the guilty plea." *Amparo v. Henderson*, No. CV 86-4310, 1989 WL 126831, at *2 (E.D.N.Y. Oct. 18, 1989) (quoting *Isaraphanich v. United States*, 632 F. Supp. 1531, 1533 (S.D.N.Y. 1986)). Petitioner's claims regarding pre-pleading constitutional violations by his trial counsel could only be successful if petitioner established that they might have affected the voluntariness of his plea. *See, e.g.*, *id.* Accordingly, petitioner has waived the right to challenge aspects of his counsel's performance that are unrelated to the guilty plea. However, since petitioner challenges counsel's performance with respect to his entry of a guilty plea, the Court further analyzes this claim.

It was not objectively unreasonable for petitioner's trial counsel to advise petitioner to plead guilty to second-degree burglary. As discussed *infra*, a review of the state court records in this case, including the plea and sentencing transcripts, shows that petitioner's plea was voluntary, and his attorney was not ineffective for advising petitioner to accept the plea. Petitioner argues that there was not sufficient evidence to find him guilty of burglary in the second degree. However, the prosecution possessed substantial evidence regarding petitioner's guilt to put forward at trial. Specifically, the prosecution could have presented: (1) the testimony of Officer McKenna, who responded to the 911 call and observed Wager crawling through the door of the delicatessen; (2) 911 tapes; (3) testimony from the tenant living directly upstairs from the AM/PM Deli who was a resident of the building on the date in question; and (4) testimony from the owner of the building that the building was both a deli and a residence. (*See, e.g.*, Plea Tr. 12.) Therefore, there was sufficient evidence of burglary in the second degree to be brought against Wager at trial. Additionally, petitioner received an advantageous plea agreement and satisfied the charges pending against him by pleading guilty to attempted second-degree burglary, a class D violent felony. *See People v. Silent*, 831 N.Y.S.2d 194, 195 (App. Div. 2007). Under the plea agreement negotiated by defense counsel, petitioner received the minimum sentence possible as a persistent violent felony offender. (Plea Tr. 10.)

Moreover, there was sufficient testimony at the second grand jury hearing to indict Wager on a charge of second-degree burglary. Under New York law, in evaluating whether the evidence before a grand jury is legally sufficient, "a reviewing court must consider 'whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury.'" *People v. Forino*, 828 N.Y.S.2d 81, 82 (App. Div. 2006) (collecting cases). "Legally sufficient evidence is defined in C.P.L. § 70.10(1) as 'competent evidence which, if accepted as true, would establish every element of an offense charged.'" *People v. Bello*, 705 N.E.2d 1209, 1211 (N.Y. 1998) (quoting N.Y. Crim. Proc. Law § 70.10[1]).

At the second grand jury proceeding, Officer McKenna testified that he observed Wager emerging from the burglarized building with a bag that contained the stolen items. (McKenna Tr. 10-19.) Furthermore, there was testimony that there were two residential apartments on the second floor of the building containing the AM/PM Deli, and that those apartments were occupied by residents. (*See* Marmol Tr. 21; Mizced Tr. 13, 15.) When a portion of a building is utilized for overnight lodging that building is considered to be a dwelling pursuant to the meaning of the Penal Law. *See* N.Y. Penal Law § 140.00[2], [3]; *see, e.g.*, *People v. Paul*, 612 N.Y.S.2d 133, 133-34 (App. Div. 1994) ("Defendant's claim that the evidence was insufficient to prove burglary in the second degree since the premises he was accused of entering was a warehouse, not a dwelling, is without merit, there being overwhelming evidence that families use at least two floors of the building in which the warehouse is located as overnight lodgings, making the warehouse part of a 'dwelling' within the meaning of Penal Law § 140.00(3)." (collecting cases)); *People v. Rohena*, 589 N.Y.S.2d 156, 158 (App. Div. 1992) ("The Penal Law in the section dealing with trespass and burglary, specifically notes in its definition of 'building' that '[w]here a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building' (Penal Law, § 140.00[2]). Thus, the evidence adduced, that the rest of the building in which the doctor's office was located was occupied by tenants residing there at night, established that the office was part of a 'dwelling,' and therefore, that the crime was burglary in the second degree."); *see also Quinn v. People*, 71 N.Y. 561, 573 (1878) ("From this discussion it appears that the act of the plaintiff in error, in breaking into the store in the night-time with felonious intent, a part as it was of a whole building in other parts of which there were persons dwelling and sleeping at the time, though there was no internal communication between the store and their rooms, was an act of recklessness and depravity, likely to cause alarm and to lead to personal violence and so endanger human life. It also appears that the revisers and the Legislature, in the defining and restrictive section quoted (§ 16 of the Burglary act), did not mean to say that one room in a whole building, within the same outer walls and under the same roof as the whole building, must be also connected with the rest of the building by an internal, inclosed or covered communication, to make it a part of that building, and to make it a part of a dwelling-house within the definition of burglary in the first degree given by them, if any part of the building was occupied for the purposes of a dwelling-house."). As noted earlier, a person is guilty of burglary in the second degree when "he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling." N.Y. Penal Law § 140.25.[2] Petitioner was seen emerging from a building that he unlawfully occupied with a bag containing cigarettes, cash, and a cash register that he did not own. There was testimony that a portion of the building that petitioner had unlawfully entered was used for overnight lodging by at least two families. Accordingly, there was sufficient evidence to

---

[2] To the extent that petitioner argues that he was not aware that the building he entered was a dwelling, petitioner's knowledge of the building's use is irrelevant to the burglary inquiry. The culpable mental state of "knowingly," for both trespass and burglary, "applies to the element of entering or remaining unlawfully in or upon premises." *People v. Collazo*, 742 N.Y.S.2d 214, 215 (App. Div. 2002) (citing Donnino, Practice Commentaries, McKinney's Consolidated Laws of N.Y., Book 39, Penal Law § 140.00, at 12). Thus, "[b]urglary is an aggravated form of criminal trespass, adding the element of intent to commit a crime in a building or dwelling. Such aggravating circumstances 'are factors to which a culpable mental state does not ordinarily attach.'" *Id.* (quoting *People v. Mitchell*, 571 N.E.2d 701, 703 (1991)).

10

support the grand jury's indictment of petitioner for second-degree burglary. As such, it was not ineffective for trial counsel to choose not to challenge the second indictment.

Although Wager's failure to show deficient performance disposes of his ineffective assistance claim, the Court also finds that even assuming *arguendo* that trial counsel's performance was deficient, any alleged deficiencies in his trial counsel's performance did not result in prejudice to petitioner's case. "In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight of error' in order to determine whether the prejudice 'reache[s] the constitutional threshold.'" *Sommerville v. Conway*, 281 F. Supp. 2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d. Cir. 2001)). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In light of the overwhelming evidence of petitioner's guilt—namely, the testimony of Officer McKenna, who had caught petitioner in the act of burglarizing the AM/PM Deli, and the testimony of Mizced and Marmol regarding the building's use—the Court concludes that it is highly unlikely that, had petitioner proceeded to trial, petitioner would have been found not guilty. The Court further notes that, had petitioner been convicted by jury, he would have faced a potentially harsher sentence. Moreover, there is no reasonable probability that, if defense counsel had done the additional investigation and other items of which petitioner complains, petitioner would not have pleaded guilty and would have insisted on going to trial.

Accordingly, petitioner did not receive constitutionally deficient assistance of trial counsel with respect to his guilty plea, and the County Court's determination that petitioner's other claims regarding his trial counsel's ineffectiveness were barred by the guilty plea was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Thus, Wager's request for habeas relief on grounds of ineffective assistance of trial counsel is denied. *See, e.g.*, *Jackson v. Morgenthau*, No. 07 Civ. 2757 (SAS)(THK), 2009 WL 1514373, at *15-16 (S.D.N.Y. May 28, 2009) (finding effective assistance of counsel and dismissing habeas petition when petitioner claimed that trial counsel did not sufficiently challenge the evidence supporting the indictment).

2. Voluntariness of Guilty Plea

The well-established standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citations omitted). As discussed *supra*, the Court determines that trial's counsel's advice was well within the range of competence demanded by attorneys in criminal cases. Moreover, the Court proceeds to examine the entire circumstances of petitioner's guilty plea, and concludes that petitioner's guilty plea was knowing, intelligent, and voluntary.

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Adams*,

448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the grounds that it was not made knowingly and voluntarily. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

Wager claims that his plea was involuntary because it was based on the faulty advice of counsel that Wager would be unable to win at trial. In this regard, the Supreme Court has stated:

> In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*Id.* at 769-70. The Supreme Court further noted that "a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." *Id.* at 770. This Court concludes that petitioner's plea was intelligently made. Based upon the evidence presented at the second grand jury proceeding, trial counsel concluded that it was not likely that Wager would win at trial. Accordingly, counsel advised Wager to take a guilty plea. As discussed extensively *supra*, trial counsel's assistance was not ineffective.

Although petitioner further argues that he was not competent or coherent at the time of his guilty plea, upon reviewing the record of petitioner's plea allocution, the Court finds there is nothing to support his assertion that his plea was not knowing, intelligent, and voluntary. Wager was fully advised at the time of his plea of the nature of the charges and those rights he was waiving by entering a guilty plea. At the plea, he denied any coercion, or that any promises had been made to him other than those stated in open court in his presence, and stated that he was entering the plea of his own free will. At the outset of the plea proceedings, the court advised petitioner that he should speak with his attorney if there was anything that he did not understand and that the court would also answer any questions that the petitioner might have. (Plea Tr. 3.) Petitioner specifically informed the court that he had enough time to speak with his attorney before pleading guilty and that he was satisfied with the manner of his attorney's representation. (*Id.* at 4-5.)

12

Petitioner indicated that he understood the rights he was giving up by pleading guilty and that he waived his right to appeal as a condition of the plea. (*Id.* at 6, 13.) Additionally, petitioner told the court that no one had threatened him or forced him to plead guilty. (*Id.* at 5-6.)

At the plea, Wager admitted he entered the building at 241 Nassau Road with intent to commit a crime therein and stole property from inside the building. (*Id.* at 12.) Wager also acknowledged that he had no reason to doubt that people were living upstairs in that dwelling. (*Id.*) "A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. People of New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Morales v. United States*, No. 08 Civ. 3901, 2009 WL 3353064, at *5 (S.D.N.Y. Oct. 20, 2009) (quoting *Bousley*, 523 U.S. at 619 (internal quotations omitted)).

Under the facts and circumstances of this case, "this Court cannot say that a determination that the plea was freely and voluntarily given was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Sanchez*, 2009 WL 1617142, at *6 (quoting 28 U.S.C. § 2254(d)).

### 3. Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey,* 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). As noted *supra*, under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both: (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Mayo*, 13 F.3d at 533-34.

Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). In fact, "strategic choices made after thorough investigation of law and facts relevant to

13

plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, a court sitting in habeas review should not "second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Jones*, 463 U.S. at 754; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

Petitioner argues that appellate counsel was ineffective for failing to challenge the trial counsel's effectiveness. Specifically, petitioner asserts that, if appellate counsel would have reviewed petitioner's records thoroughly and competently, the records would have revealed that there was "not even a scintilla of evidence" for a charge of burglary in the second degree. In fact, petitioner's appellate counsel challenged the voluntariness of petitioner's guilty plea and the hearing court's suppression ruling. Appellate counsel summarized the relevant facts, cited appropriate law, and competently argued petitioner's position in raising these claims. Petitioner's appellate counsel also sought leave to appeal to the New York Court of Appeals. Nevertheless, petitioner contends that appellate counsel was ineffective because counsel did not focus on challenging trial counsel's effectiveness.[3]

However, appellate counsel's failure to make an additional claim is the type of judgment that, under *Jones* and *Strickland*, the Court should not second-guess under the circumstances of this case. In attempting to meet the first prong of *Strickland*, petitioner must do more than show that his appellate counsel "omitted a nonfrivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 462 U.S. at 754). Instead, petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* Petitioner argues that appellate counsel did not challenge trial counsel's effectiveness for failing to understand the law, conduct legal research, and investigate the facts and procedure of petitioner's case, as well as trial counsel's advice that petitioner plead guilty. Additionally, petitioner claims that appellate counsel should have argued that trial counsel failed to challenge the sufficiency of the evidence and oppose the application to re-present the charge of burglary in the second degree to the grand jury. However, petitioner has not demonstrated that these "ignored" issues were clearly stronger than those presented. Federal courts should not "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. *Jones*, 463 U.S. at 754.

In any event, as discussed extensively *supra*, trial counsel's performance was not deficient. Therefore, any challenge to trial counsel's efficacy would have been without merit. In fact, the record reveals that petitioner received meaningful representation. Therefore, appellate counsel's decision to pursue and focus on other issues, rather than those suggested by petitioner, hardly makes appellate counsel's advocacy ineffective.

Furthermore, many of petitioner's claims regarding trial counsel's ineffectiveness involve matters that were unreviewable, because defendant pled guilty and forfeited appellate review of claims that do not directly involve the plea-bargaining process. *See*

---

[3] As discussed above, petitioner specifically argues that trial counsel was ineffective for: (1) failing to investigate the facts and procedural history of the case; (2) failing to understand the law; (3) failing to adequately oppose the People's application to re-present the charge of second-degree burglary to the grand jury; (4) failing to conduct legal research; (5) failing to challenge the legal sufficiency of the second-degree burglary charge; and (6) providing information to petitioner that led to the belief that petitioner could not win at trial and that a guilty plea was the best course of action. The Court finds all of these arguments to be without merit.

14

*People v. Silent*, 831 N.Y.S.2d 194, 195 (App. Div. 2007); *People v. Turner*, 834 N.Y.S.2d 666, 666 (App. Div. 2007); *People. v. Scalercio*, 781 N.Y.S.2d 745, 745 (App. Div. 2004); *see also People v. Petgen*, 435 N.E.2d 669, 671 n.3 (N.Y. 1982). Petitioner forfeited his complaints regarding trial counsel's failure to investigate the facts and procedural history of the case, failure to understand the law, failure to adequately oppose the People's application to re-present the charge of second-degree burglary to the jury, failure to conduct legal research, and failure to challenge the legal sufficiency of the second-degree burglary charge when he knowingly, voluntarily, and intelligently pled guilty. Thus, appellate counsel was not ineffective for failing to challenge these actions of trial counsel. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (finding that once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

Accordingly, this Court cannot conclude that the finding that petitioner received effective assistance of appellate counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, petitioner's application for habeas relief on this ground is denied.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: June 8, 2010
Central Islip, NY

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Kathleen M. Rice, Esq., Nassau County District Attorney, by Tammy J. Smiley, Esq., Lauren Del Giorno, Esq., Michael Eric Soffer, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.